## JACKSON v. MARTIN.

### No. 1811.

Court of Appeal of Louisiana. First Circuit.

Feb. 15, 1938.

S. S. Reid, of Amite, for appellant.

J. H. Inman, of Ponchatoula, for appellee.

OTT, Judge.

Plaintiff a colored man, was working for the defendant in pulling logs with a skidder when he broke both bones in his right leg between the ankle and knee. The accident occurred on April 24, 1935. It is admitted that plaintiff received this injury while in the employ of the defendant, and that at the time of the injury he was receiving $1.80 per day, but defendant claims that plaintiff was discharged and was able to return to work on September 5, 1935, and admits owing compensation for twenty weeks at $7.02 per week. Plaintiff claims compensation for fifty weeks at $7 per week, and $30 for medical expenses, plus $10 for an X-ray picture. Judgment was rendered in favor of plaintiff for compensation for 20 weeks at $7.02 per week, and plaintiff has taken this appeal from that part of the judgment which rejected the remainder of his demands.

Defendant alleges in his answer that plaintiff refused to follow the directions given for the treatment of his leg; that he cut off the plaster cast and splints which were put on by defendant's physician, thus preventing the broken bones from properly healing, necessitating putting a new cast on the leg; that plaintiff refused to receive orders for drugs furnished by the physician.

We find that the proof fails to support these allegations. The only evidence that plaintiff refused to receive a prescription for medicine was elicited by a question to plaintiff on cross-examination by defendant's counsel, when he asked plaintiff if he did not refuse to receive a prescription for alcohol rub, and plaintiff denied this emphatically. There is no other testimony in the record on this point.

The defendant's doctor testified that about twenty days after he had set plaintiff's broken leg, he called to see him and found that the cast had been loosened to

such an extent that it would not hold the broken bones in place; that he then took an X-ray of the leg which showed that the healing process had then proceeded to the point where it was impossible to reset the leg; that he put a new cast on it. Plaintiff denies that he loosened or removed the bandage on his leg. He is supported in this denial by two other men who saw him every night, with one of whom he was staying during the time of the injury. One of these men says that plaintiff suffered intensely from pain in the leg one night, making it impossible for him to sleep, and the doctor was called and came and himself loosened the bandage, stating that it was too tight. It is admitted that if three other witnesses were present they would testify substantially as these two men.

We think that the evidence fails to show that plaintiff refused to follow instructions or that he interfered in any way with the treatment given him by the defendant's physician. In any event, this question becomes of little importance as the defendant alleges, and his physician testifies, that the plaintiff's leg was fully healed and he was able to work on September 5, 1935, up to which time defendant offers to pay compensation.

■ The sole remaining question is whether or not as a matter of fact plaintiff was disabled from work after September 5, 1935. He went to see Dr. Ford N. Jones of New Orleans on October 7, 1935. Dr. Jones says that, at that time, plaintiff was walking on crutches, with a badly swollen right leg. He had an X-ray made which showed that there had been a fracture of both the tibia and the fibula, with a good reduction of the fracture, and an immense callous formation. At that time plaintiff was not able to put his weight on his foot. Dr. Jones treated him for about five weeks, at the end of which time plaintiff was better, but not able to work, as he was still using the crutches. Plaintiff was sent home for the reason that he was unable to stay any longer. He sent the crutches back to Dr. Jones three or four months later.

We are satisfied from the testimony of this doctor, whose integrity and standing we have no right to question, that plaintiff was disabled from work for this five weeks, as well as when he left this doctor's treatment about the middle of November. We are advised in brief that the trial judge refused to grant plaintiff further compensation after September 5, 1935, for the reason that defendant's physician says that he was able to return to work on that date, and, as there is a conflict in the medical testimony, the result is a balancing of this testimony, leaving plaintiff with a failure to overcome the burden of proof which he bears. But we think there are at least two vital considerations that throw the scales in favor of plaintiff; first, the fact that Dr. Jones was the last physician to examine and treat plaintiff gave him a better opportunity of knowing the condition of plaintiff after September 5th than the defendant's doctor; and, in the second place, the plaintiff himself testifies that he was not able to do any work until the following May. We have no reason to ignore his testimony and give it no weight, especially in view of the fact that his testimony has not been contradicted. On the contrary, it is rather corroborated by the fact that, as Dr. Jones says, plaintiff sent the crutches back after three or four months which would have brought that event up to about the spring of 1936.

Plaintiff is only claiming compensation up to the latter part of March, 1936, and we think the testimony shows that plaintiff was disabled from manual labor at least up to that period of time. He says that he actually could not work until May of that year. We feel that he is entitled to compensation for the fifty weeks claimed.

■ The evidence shows that Dr. Jones charged $30 for his services, and this appears to be a reasonable amount for the services rendered by him. As the evidence relative to the bill for the X-ray was excluded, we are not at liberty to include that amount as part of the claim.

For the reasons assigned, it is ordered that the judgment appealed from be amended by awarding plaintiff compensation for a period of fifty weeks, at $7 per week, beginning April 24, 1935, with legal interest on the weekly payments from their respective due dates, until paid, and for the further sum of $30 for medical expenses, and, as thus amended, the judgment is affirmed; defendant to pay cost in both courts.